02-10-058-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-10-00058-CR

 

 


 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 
 
 
  
 V.
  
 
 
 
 
 Stewart Le Richardson
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 396th
District Court OF Tarrant COUNTY

----------

 

OPINION

----------

 

I. 
Introduction

Appellee
Stewart Le Richardson was charged by indictment with multiple counts of
intoxication-related crimes arising out of the same episode.  The indictment
also alleged prior convictions as repeat-offender notices to enhance the
punishment range.  At a pretrial hearing, the trial court granted Appellee’s
motion to quash the enhancement allegations, and the State appealed.  After the
case was submitted and argued, this court requested briefing from the parties
on whether the trial court’s order constituted a dismissal of any portion of
the indictment so that a State’s appeal was authorized under article
44.01(a)(1) of the code of criminal procedure.[1]  See Tex. Code
Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 2011).  We hold that the trial
court’s order did not dismiss “a portion of the indictment” and that,
therefore, the State’s appeal is not permitted under article 44.01(a)(1).

II. 
Background

          The
indictment in this case arose out of an alcohol-related car accident that
caused serious bodily injury to four family members, and it charged Appellee in
relevant part with eight counts of second-degree aggravated assault.  See Tex.
Penal Code Ann. § 22.02(a)(1), (2) (West 2011).  For enhancement purposes, the
indictment also alleged three prior out-of-state alcohol-related “aggravated
misdemeanor” convictions (designated as repeat offender notices), all arising
out of the same criminal episode.  The State intended to rely on the
enhancement paragraphs to elevate the potential punishment for the second-degree
aggravated assault charges to the first-degree range.  Throughout pretrial
preparations, the State maintained that Appellee’s Iowa “aggravated
misdemeanors” should be classified as felonies under article 12.41(1) of the penal
code.[2]  In response, Appellee
filed a motion to quash the enhancement allegations in the indictment and,
alternatively, to prohibit the State from reading or alleging that he is
subject to an enhanced penalty at any phase of the trial.  He argued that the
Iowa convictions constituted misdemeanors under section 12.41(2).[3]

          At
a pretrial hearing, the trial court granted Appellee’s motion.  Afterward, the
trial court asked the State if it planned to appeal, and the State responded,
“[W]e’re going to call the injured party’s family and talk to them and then
we’re going to make a decision.  That is one of the options we are considering
is taking this up on appeal, yes. . . .  There may be some other adjustments to
which counts we’re going forward on, if we make a decision to go forward, but I
think we’ll have that answer for you [today or over the weekend].” 
Subsequently, the State informed the trial court that it planned to pursue an
appeal.  The State also requested that the trial court enter findings of fact
and conclusions of law and a written order.  At a hearing, the trial court
orally stated that section “F” of the State’s proposed findings and conclusions
summarized the trial court’s ruling.  Section “F” stated, 

Since [Appellee’s]
Iowa convictions were categorized as aggravated misdemeanors in that state,
they are not available for enhancement purposes pursuant to Tex. Penal Code ' 12.42 because they
constitute Class B misdemeanors under Tex. Penal Code ' 12.41(2). 

 

The
trial court also entered the following February 8, 2010 written order:

[T]he State may not
use the offense[s] alleged in the repeat offender notice of the indictment as
enhancement paragraphs, and may further not refer to those offenses as felony
convictions, in that they are misdemeanors.

 

The
State’s notice of appeal stated that it was “made pursuant to Texas Code of
Criminal Procedure article 44.01(a)(1) authorizing the State to appeal a trial
court order which dismisses any portion of an indictment.”  On July 6, 2011,
this court sent a letter to the parties stating that

the court is
concerned that it may lack jurisdiction over this appeal; therefore, briefing
is requested on whether the trial court’s February 8, 2010 order constitutes a
dismissal of any portion of the indictment so that a State’s appeal is authorized
under article 44.01(a)(1) of the code of criminal procedure.  See Tex.
Code Crim. Proc. Ann. art. 44.01(a)(1) (West Supp. 2010). 

 

III.  Analysis

A.    The Plain Meaning of Article
44.01(a)(1)

The
State’s right to appeal is set out in article 44.01.  See Tex. Code
Crim. Proc. Ann. art. 44.01; State ex rel. Lykos v. Fine, 330
S.W.3d 904, 915 (Tex. Crim. App. 2011) (orig. proceeding).  Pertinent to this
analysis, article 44.01(a)(1) provides that the State is entitled to appeal a
trial court’s order that “dismisses an indictment . . . or any portion of an
indictment . . . .”  Tex. Code Crim. Proc. Ann. art. 44.01(a)(1).  Citing Boykin
v. State, the State asserts that the plain meaning of this unambiguous
language invokes its right to appeal because (1) the State alleged out-of-state
prior convictions (for enhancement purposes) in the indictment,[4]
(2) these enhancement paragraphs were a “portion of the indictment” relied upon
by the State, and (3) the trial judge rejected the State’s enhancement
provisions.  See 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

In
line with Boykin, however, the court of criminal appeals has held that
“a word should be construed according to any technical or particular meaning
that it has acquired by legislative definition or otherwise.”  Lopez v.
State, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); see Tex. Code
Crim. Proc. Ann. art. 3.01 (West 2008) (“All words, phrases and terms used in
this Code are to be taken and understood in their usual acceptation in common
language, except where specially defined.”).  As demonstrated below, the words
“indictment” and “enhancement paragraphs” have particular meanings that do not
support the State’s position.

In Brooks
v. State, the court of criminal appeals held that “prior convictions used
as enhancements must be pled in some form, but they need not be pled in the
indictment—although it is permissible and perhaps preferable to do so.”  957
S.W.2d at 33; see Williams v. State, 172 S.W.3d 730, 734 (Tex.
App.—Fort Worth 2005, pet. ref’d).  In so holding, the Brooks court
explained,

Article 27.01
provides that an indictment is the State’s “primary pleading in a
criminal action” (emphasis added).  By inference, the statute indicates that
other, ancillary pleadings by the State are possible, and in fact, we have
recognized that certain matters, such as the intent to seek a deadly weapon
finding, may be pled apart from the indictment.  Article 21.03 provides that
“[e]verything should be stated in an indictment which is necessary to be
proved.”  We have interpreted that provision to mean that an indictment must
include “everything necessary to be proven to sustain a conviction in the
guilt/innocence phase” of a trial.

 

957
S.W.2d at 32 (citations omitted); see Pelache v. State, 324 S.W.3d 568,
576 (Tex. Crim. App. 2010) (holding that “due process does not require pretrial
notice ‘that the trial on the substantive offense will be followed by an
habitual criminal proceeding’”) (quoting Oyler v. Boles, 368 U.S. 448, 452,
82 S. Ct. 501, 504 (1962)).

In Calton
v. State, the court of criminal appeals explained the difference between a
prior conviction alleged as an enhancement provision and a prior conviction
alleged as an element of an offense.  176 S.W.3d 231, 233–34 (Tex. Crim. App.
2005).  The Calton court explained, 

Our Legislature has
defined the elements of an offense as the forbidden conduct, the required
culpability, any required result, and the negation of any exception to the
offense. . . . 

 

A prior conviction
alleged for enhancement “is not really a component element of the primary
offense.”  Instead, it is “an historical fact to show the persistence of the
accused, and the futility of ordinary measures of punishment as related to
him.”  An enhancement “increase[s] the punishment range to a certain range above
that ordinarily prescribed for the indicted crime.”  It does not change the
offense, or the degree of the offense, of conviction.   There can be no
enhancement until a person is first convicted of an offense of a certain
degree. 

 

Id.
(citations omitted); see Reyes v. State, 314 S.W.3d 74, 80 (Tex.
App.—San Antonio 2010, no pet.) (holding that if the prior conviction is an
enhancement allegation, it is not an element of the offense, and it need not be
pled in the indictment or included in a hypothetically correct jury charge
regarding the primary offense).[5]

          Here,
the State does not argue that the prior convictions set out in the indictment
are elements of the primary offenses.  Instead, the State asserts that the
prior convictions are alleged for enhancement purposes.  Indeed, the State’s
merits brief provides that “[t]he State seeks reinstatement of repeat-offender
paragraphs erroneously quashed by the trial judge so that this DWI recidivist
will face the highest possible range of punishment when ultimately tried for
his Texas crimes.”

          Notably,
in discussing the State’s right under article 44.01(b) to appeal an illegal
sentence, the court of criminal appeals explained that 

Chapter 12 of the
Penal Code provides the punishment ranges for offenses, and includes the ranges
for habitual and repeat offenders.  The duration of punishments prescribed for
habitual and repeat offenders is part of the sentence just as is the duration
of punishments prescribed for the other types of offenses addressed in Chapter 12.
. . . The legislature’s decision to prescribe the punishments for exceptional
sentences and those for ordinary sentences in the same explicit manner supports
the conclusion that both are included in the meaning of “sentence” under
article 42.02.

 

State
v. Kersh, 127 S.W.3d 775, 777–78 (Tex. Crim. App. 2004) (citation
omitted); see generally Wooldridge v. State, 158 S.W.3d 484 (Tex. Crim.
App. 2005) (discussing Kersh and article 44.01(b)).  In light of the
accepted meanings of “indictment” and “enhancement paragraphs,” the trial court
did not dismiss “a portion of the indictment.”

B.  State
v. Moreno

          The
State also asserts that the principles set out in State v. Moreno—in
which the court of criminal appeals reviewed the legislative history of the
State’s right to appeal—control and support its right to appeal.  See
807 S.W.2d 327 (Tex. Crim. App. 1991).  An analysis of Moreno and its
progeny, however, supports our conclusion that the trial court did not dismiss
a portion of the indictment.

The State charged Moreno with
knowingly agreeing to engage in sexual conduct.  Id. at 328.  Moreno
filed a motion to quash the information, alleging that the term “agree” should
be defined in greater detail.  Id.  The trial court quashed the
information, and the State appealed.  The court of appeals held that article
44.01 did not allow the State to appeal because the trial court did not order
the information dismissed and the State could cure the alleged defect by
amendment and continue its prosecution.  Id. at 328–29.  In reversing
the court of appeals, the court of criminal appeals held that the issue was the
meaning of “dismiss” in the context of article 44.01(a)(1), allowing the State
to appeal a trial court order that dismisses any portion of an indictment.  Id.
at 329.  The court of criminal appeals observed that, in enacting article
44.01, the Texas Legislature “borrowed liberally from its federal counterpart,
18 U.S.C. § 3731,”[6] and that “[c]onsequently,
we will look to the federal government’s powers to appeal from an order
‘dismissing an indictment’ in a criminal case to understand the parameters of
the State’s appellate powers under Article 44.01.”  Id. at 329–30 &
n.2.  The Moreno court considered the United States Supreme Court’s
previous holding that 18 U.S.C. section 3731 “‘remove[s] all statutory barriers
to Government appeals . . . [so as to allow] appeals whenever the Constitution
would permit.’”  Id. at 332 (quoting United States v. Wilson,
420 U.S. 332, 337, 92 S. Ct. 1013, 1018 (1975)).  With this legislative history
in mind, the Moreno court held that, under article 44.01(a)(1),

the State has the
power to appeal from any trial court order concerning an indictment or
information . . . whenever the order effectively terminates the prosecution in
favor of the defendant.    

 

. . . .

 

The trial court
“effectively terminates” the prosecution against the accused whenever the
effect of its order forces any alteration of the indictment or information
before the trial on the merits and the State is not willing to comply with that
order. . . .

 

[In Moreno],
[t]he trial court granted [the defendant’s] motion [to quash] and effectively
foreclosed the State from proceeding with the information under which it wished
to proceed and thus foreclosed the State from proceeding under its theory of
prosecution. . . . [F]or all intents and purposes, the trial court’s actions
forced the State to alter its pleadings—either by re-indicting or amending
the original—before it would be allowed to try Moreno.  The State’s
refusal to amend effectively terminated the criminal proceedings. 

 

Id. at
332–33 & n.7 (emphasis added). 

          In
the instant case, the State contends that “[a]pplying the State’s right to
appeal liberally, as Moreno authorizes,” its appeal is valid.  The State
maintains that because “it has always been the State’s expressed goal (hence,
its prosecution theory) to obtain a life sentence on this repeat drunk driver,”
“[t]he trial judge’s decision to grant Appellee’s motion to quash the
enhancement provisions completely undermined the State’s theory of
prosecution.”

Notably,
however, the court of criminal appeals has addressed the language in Moreno
regarding the federal government’s broad right to appeal:

[I]n United States
v. Wilson, the United States Supreme Court held that, in enacting 18 U.S.C.
' 3731, Congress
intended to remove all barriers to a government appeal in a criminal case other
than those imposed by the Constitution.  We have never said the same of the
Texas statute governing appeals by the State.  Instead, in Texas, appeals by
either the State or the defendant in a criminal case are permitted only when
they are specifically authorized by statute.  In Texas, “[t]he standard for
determining jurisdiction [of an appellate court] is not whether the appeal is
precluded by law, but whether the appeal is authorized by law.”  

 

Lykos,
330 S.W.3d at 915 (citations omitted).  In a footnote, the Lykos court
further explained, “We have stated that we construe art. 44.01 liberally, but
that is in the context of construing the explicit provision of the statute.”  Id.
at 915 n.48.  Thus, the only issue is whether the State’s appeal is authorized
by article 44.01(a)(1).  See id. at 915.

The
court of criminal appeals has reaffirmed the Moreno language that, under
article 44.01(a)(1), the State has the right to appeal any order, short of an
acquittal, that effectively terminates the prosecution in favor of the
defendant. State v. Stanley, 201 S.W.3d 754, 758 (Tex. Crim. App. 2006);
Morgan, 160 S.W.3d at 4.  In the instant case, the trial court’s action
did not force the State to alter its pleadings before it would be allowed to
try Appellee.  In fact, after the trial court ruled that Appellee’s prior
out-of-state convictions were “not available for enhancement purposes,” the
State announced that it was considering appealing the trial court’s ruling and,
if it did not, “[t]here may be some other adjustments to which counts we’re
going forward on.”  Subsequently, the State informed the trial court
that it planned to pursue an appeal and stated:

          Any
representation by the State that we intend to try these cases all together will
be withdrawn if we lose this appeal and the maximum punishment is only 20 years
in prison. . . . 

 

. . . [I]f the State
does not succeed in this appeal and we are limited by 20 years, we have no
intent of trying these cases any way other than one or two at a time, and we
will be doing that so we have an option of asking this court to stack sentences
after multiple trials. . . .  

 

Thus,
the record indicates that the trial court’s order did not “effectively
terminate the State’s prosecution” and that, therefore, the trial court’s order
did not dismiss any portion of the indictment.  Recent case law supports this
conclusion.

          C. 
Recent Case Law

          The
recent Lykos case is instructive.  Lykos sought a pretrial ruling on a
possible punishment issue, asking the trial court to declare the Texas
death-penalty sentencing statute facially unconstitutional.  330 S.W.3d at
906.  In response, the State filed a mandamus petition in the court of criminal
appeals asking the court to prohibit a pretrial evidentiary hearing on the
defendant’s motion and to prohibit the trial court from granting such a motion
before the State had an opportunity to prove its charged indictment before a jury. 
Id.  The Lykos court conditionally granted the State mandamus
relief in part because it established that the State had no other adequate
legal remedy.  Id. at 907.  The Lykos court explained that

[t]he only statutory
provision that arguably could apply to the present situation is an order that
dismisses any portion of an indictment.  But a capital-murder indictment when
the State seeks the death penalty reads exactly the same as a capital-murder
indictment when the State does not seek the death penalty.  That is, the
present indictment, like all capital-murder indictments, simply sets out the
elements of capital murder under Section 19.03 of the Texas Penal Code.  

 

. . . . 

 

. . . [T]he face of
the indictment would not be affected by any pretrial ruling. . . .  [T]he State
could not appeal any such pretrial advisory ruling under Article 44.01.

 

Id. at
913–14.  Noting that State v. Morgan “dealt with a very similar
situation,” the Lykos court explained:

[In State v.
Morgan, 160 S.W.3d 1 (Tex. Crim. App. 2004)], the State filed
a pretrial motion asking the trial judge to rule that its DWI information,
which contained an enhancement paragraph alleging a prior DWI conviction,
charged a Class A misdemeanor.  The defense aptly noted that the State’s motion
was premature; it was not entitled to any such pretrial ruling because it dealt
only with “a determination on a punishment issue.”  Nonetheless, the trial
judge made an advisory ruling that, if the defendant were convicted, the
punishment range would be for a Class B, not a Class A, misdemeanor.  The State
attempted to appeal, and the court of appeals accepted jurisdiction, but we
concluded that the State was seeking an impermissible interlocutory appeal. 
The trial judge’s ruling did not affect the face of the indictment, it merely
advised how he intended to proceed at punishment if the State obtained a
conviction.  We noted that “the prosecution would proceed regardless of the
trial court’s ruling.”  Thus, the State was attempting an interlocutory appeal,
and, except for the appeal of a motion to suppress evidence under certain
circumstances, such interlocutory appeals are not statutorily permitted under
article 44.01.

 

Id.  In
Morgan, the court of criminal appeals held,

Since the prosecution
would proceed regardless of the trial court’s ruling, this is an interlocutory
appeal.  As a general rule, interlocutory appeals are not permitted.  Art.
44.01 provides several instances in which the State can appeal, but only one of
those involves an interlocutory appeal.  Subsection (a)(5) allows the State to
file an interlocutory appeal from a trial court’s order granting a motion to
suppress evidence.  But the statute specifies conditions to such an appeal. 
The prosecutor must include a certification that the appeal is not taken for
purposes of delay.  There is no certification requirement under any of the
other subsections, including subsection (a)(1).  So an appeal under subsection
(a)(1) is not to be utilized as an interlocutory appeal.  It is supposed to be
used only if the prosecution is terminated. 

 

          . . . . 

 

          We disagree
with the State that the trial judge’s order “effectively terminated the
prosecution.”  The order in this case affected only Morgan’s possible
punishment range.  As a result, this is an interlocutory appeal for which
appellate courts have no jurisdiction.

 

160
S.W.3d at 4–5 (internal citations omitted). 

          The
State asserts that both Lykos and Morgan are distinguishable
because the trial court in each case did not actually delete a portion of the
indictment.  The State finds it significant that Lykos involved a
capital murder indictment that set out only the elements of capital murder
regardless of whether the State is seeking a death sentence and that,
therefore, no language was deleted.  The State finds it significant in Morgan
that the trial court did not delete the enhancement provision but instead
decided that, based on the enhancement provision, the punishment range would be
for a Class B rather than a Class A misdemeanor if the defendant were to be
convicted.  Such a distinction, however, is not dispositive.

          The
Lykos court held that article 44.01 “either does or does not
specifically authorize a State’s appeal” and that it “does not authorize the
State to appeal from a pretrial ruling on a possible punishment issue that
fails to dismiss any part of the actual indictment.”  330 S.W.3d at 914 (citing
Morgan, 160 S.W.3d at 5).  The referenced page of the Morgan opinion
holds that an appeal under subsection (a)(1) is “supposed to be used only if
the prosecution is terminated.”  160 S.W.3d at 5.  The Morgan court
explained that because the case before it would “proceed, one way or another,
after the trial court’s order . . . the trial court’s order did not terminate
the prosecution, and no jurisdiction exists for this appeal.”  Id. 

In
the instant case, the State asserted that “one of the options” it was
considering was appealing the ruling but that if it decided “to go forward,” it
might adjust the counts.  Thus, by all accounts, the prosecution in this case
will proceed at one point or another regardless of the trial court’s ruling,
and therefore, this is an impermissible interlocutory appeal.  See id.
at 4.  The following language from the Morgan opinion is apropos:  

[n]othing in the
trial court’s order purports to prevent the prosecution from moving forward on
this information.  The order does not force an alteration of the information
before trial can proceed.  Instead, it forces the State to alter the
information before trial can proceed in the manner in which the State chooses. 


 

Id. 
Thus, as the court of criminal appeals advises in Morgan, because the
prosecution (against Appellee) will proceed, the State presents an
interlocutory appeal.  See id.  “An appeal under subsection
(a)(1) is not to be utilized as an interlocutory appeal.  It is supposed to be
used only if the prosecution is terminated.”  Id. at 5.  Notably, in the
State’s memorandum and motion asking the trial court to reconsider its ruling
on Appellee’s motion to quash, the State noted that “[t]he trial court
graciously afforded the State time to consult with the aggrieved family and to
allow the prosecution to consider its options, including an interlocutory
appeal.”

          The
State cites several intermediate appellate court opinions in support of its position.[7]  As demonstrated below, however, all but one
1996 unpublished case out of the Dallas court of appeals support a holding that
the State’s appeal is not permitted under article 44.01(a)(1).[8]

In State
v. Christensen, the defendant was indicted for felony DWI.  See No.
05-10-00940-CR, 2011 WL 2176656, at *1 (Tex. App.—Dallas June 6, 2011, pet.
ref’d) (not designated for publication).  In Texas, a DWI offense is a
third-degree felony if the person has two prior convictions relating to the
operating of a motor vehicle while intoxicated.  Id. (citing Tex.
Penal Code Ann. ' 49.09(b)(2)).  Christensen’s indictment alleged two such
convictions, one in Denton County in 1989 and one in Colorado in 2002.  Id. 
The Colorado conviction was for driving while impaired (DWAI).  Id. 
Christensen filed a motion to quash the enhancement paragraph relating to the
DWAI, asserting that Colorado’s law was not substantially similar to the Texas
DWI statute.  Id.  The trial court granted the motion, and the State
appealed.  Id.  In reversing the trial court’s ruling, the Fifth Court of
Appeals addressed article 44.01(a)(1) and held that

[t]he issue in Morgan
was whether the trial court properly construed the information to allege a
Class B misdemeanor with enhanced punishment rather than a Class A
misdemeanor.  The trial court’s order did not effectively terminate the
prosecution.  In this case, the trial court’s order did not simply construe the
indictment while allowing the prosecution to proceed.  Rather, “[p]rior
convictions are essential elements of a felony DWI under penal code section
49.09(b), and must be pleaded and proven at the guilt-innocence phase to
support a felony conviction.”  State v. Duke, 59 S.W.3d 789, 790 (Tex.
App.—Fort Worth 2001, pet. ref’d) (op. on reh’g).  In this case, as in Duke,
the trial court’s order quashing one of the enhancement paragraphs “effectively
dismissed the felony portion of the indictment and reduced the State’s case to
a misdemeanor prosecution.”  See id. Because the trial court effectively
dismissed a portion of the indictment, the State is authorized to appeal the
order under article 44.01(a)(1) of the code of criminal procedure.

Id.,
2011 WL 2176656, at *2.  The State asserts,  

Of most interest in Christensen
is its recognition that the Morgan appellate issue turned on facts where
the possible punishment range was affected, but the State’s information had
not been altered by the trial court’s ruling since the enhancement
paragraph remained viable.  Christensen, 2011 WL 2176656, at *2
(citation omitted).  Again, Morgan involved the trial court’s choice
between two enhancement provisions, not a decision against enhancement,
quashing a portion of the State’s pleadings.  See id.; see also
Morgan, 160 S.W.3d at 2–4.

The
State’s interpretation of Christensen appears to incorporate its “plain
meaning” Boykin argument.  The Christensen opinion, however,
distinguishes between prior convictions alleged as elements of the offense and
prior convictions alleged as punishment enhancements and holds that a trial
court dismisses part of the indictment when it quashes a prior conviction
alleged as an element of the offense.  Id., 2011 WL 2176656, at *2.  Thus,
because the State in the instant case does not assert that Appellee’s prior
convictions are elements of the offense, under Christensen, the State is
not authorized to appeal the trial court’s order under article 44.01(a)(1).

          The
State further asserts that Christensen is notable for its citations to State
v. Arredondo, No. 03-04-00638-CR, 2005 WL 2313605, at *1 (Tex. App.—Austin Sept.
22, 2005, no pet.) (mem. op., not designated for publication), and State v.
Whitehead, No. 05-94-01914-CR, 1996 WL 317117, at *1 (Tex. App.—Dallas May
30, 1996, no pet.) (not designated for publication).  The State argues that
“these referenced cases show appellate jurisdiction existed for prosecutors
where a portion of the indictment/information alleging enhancement provisions
was rejected pretrial by a trial court.”

Contrary
to the State’s position, the Arredondo case is consistent with the
conclusion that the State is not authorized to appeal the trial court’s order. 
The State charged Arredondo with felony DWI under section 49.09(b)—i.e., the
State accused him of DWI in 2003 under section 49.04, alleging two previous DWI
convictions to elevate the offense to a felony.  Arredondo, 2005 WL
2313605, at *1.  The trial court granted Arredondo’s motion to transfer the
case to a court having misdemeanor jurisdiction (based on Arredondo’s argument
that one of his prior convictions could not be used to enhance the 2003 DWI).  Id. 
The State appealed pursuant to article 44.01(a)(1), and Arredondo asserted that
the court of appeals did not have jurisdiction.  Id.  The court held
that it had jurisdiction because the order at issue “effectively terminate[d]
Arredondo’s felony prosecution in district court and because the order did not
“merely construe the indictment while permitting the district court prosecution
to proceed.”  Id.  The court of appeals affirmed the trial court’s
transfer order.  Id.

The Whitehead opinion
appears to support the State’s position.  In addition to its lack of
precedential value (because it is a 1996 unpublished opinion that has no
petition history and has never been cited until recently in Christensen),
the opinion does not contain a great deal of analysis.  Whitehead was charged
with the state jail felony offense of possession of cocaine with the punishment
enhanced by two prior felony convictions.  Whitehead, 1996 WL 317117, at
*1.  Whitehead moved to quash the enhancement paragraphs, arguing that the
State could not enhance the punishment of a state jail felony pursuant to the
habitual offender provision in section 12.42(d) of the penal code.  Id.  He
contended that article 42.12, section 15 of the code of criminal procedure
applied exclusively and required the trial court to suspend a state jail
felon’s sentence and place the defendant on community supervision.  Id.  The
trial court granted Whitehead’s motion, and the State appealed under article
44.01(a)(1).  The court of appeals held that it had jurisdiction because the
trial court’s order “dismiss[ed] the two enhancement paragraphs of the
indictment charging Whitehead with an offense.”  Id.  Thus, Whitehead
appears to be an anomaly that is not sufficiently persuasive to alter the above
analysis.  Christensen cites Whitehead favorably, but the
reasoning in Christensen supports the conclusion that article
44.01(a)(1) does not permit the State’s appeal in this instance.

The State also asserts that
two cases from this court support its position.  See Duke, 59 S.W.3d at
790–91; State v. Cordell, 34 S.W.3d 719, 720–21 (Tex. App.—Fort Worth
2000, pet. ref’d).  For the reasons discussed in Christensen, Duke
supports a determination that the trial court’s order is not appealable.  Christensen,
2011 WL 2176656, at *2.  The Cordell case is also distinguishable.

In Cordell,
the State charged the defendant with misdemeanor DWI.  In two paragraphs, the
State alleged two alternative means of intoxication—by reason of alcohol
consumption and by reason of ingestion of “alcohol, a controlled substance, a
drug, a dangerous drug, or combination of two or more of these substances.”  Cordell,
34 S.W.3d at 720.  Cordell moved to quash the second paragraph because it
failed to provide her adequate notice of what specific drug or combination of
drugs the State alleged she ingested.  Id.  The trial court agreed and
quashed the paragraph.  Id.  When the State appealed, Cordell
argued that this court did not have jurisdiction because the order quashing the
second paragraph did not effectively terminate the prosecution.  Id.  This
court disagreed, holding that “[b]ecause the State appealed instead of
proceeding to trial on paragraph one, the trial court’s decision to dismiss
paragraph two effectively terminated the prosecution against appellee.”  Id.
at 721.  Cordell is distinguishable from the instant case because
the paragraph that was dismissed was part of guilt-phase primary pleading as
defined by Brooks and article 27.01 (as discussed above) and not a
punishment enhancement paragraph as described in Calton.  See
Tex. Code Crim. Proc. Ann. art. 27.01; Calton, 176 S.W.3d at 233–34; Brooks,
957 S.W.2d at 932.

          The
State also cites State v. Mewbourn, 993 S.W.2d 771 (Tex. App.—Tyler
1999, no pet.), and State v. McGuffey, 69 S.W.3d 654 (Tex. App.—Tyler
2002, no pet.).  These two cases have similar fact patterns and holdings, and McGuffey
relies on Mewbourn; thus, we focus on McGuffey.  The State
charged McGuffey with felony DWI pursuant to section 49.09(b), which provides
that a DWI offense is a third-degree felony if the person has two prior DWI
convictions.  McGuffey, 69 S.W.3d at 655.  The trial court would not,
however, allow the State to introduce evidence of McGuffey’s two previous DWI
convictions to the jury.  Following a mistrial granted on McGuffey’s motion,
the State appealed under article 44.01(a)(1), and the court of appeals held,

We have previously
determined that when the trial court does not allow the State to read an entire
felony DWI indictment to the jury, the trial court has effectively dismissed a
portion of the indictment.  See State v. Mewbourn, 993 S.W.2d 771, 773
(Tex. App.—Tyler 1999, no pet.).  In a felony DWI trial, the State should be
allowed to read the full indictment to the jury, including the two prior DWI
convictions.  See Tamez v. State, 11 S.W.3d 198, 202 (Tex. Crim. App.
2000).  Because the trial court ordered the State not to read the two prior DWI
convictions during the reading of the indictment to the jury, effectively
dismissing that portion of the indictment, the trial court’s order became
appealable by the State pursuant to article 44.01(a)(1).

Id. at 656.  Contrary to the State’s position, McGuffey
and Mewbourn are consistent with our holding that article 44.01(a)(1)
does not authorize the State’s appeal in this instance.

IV. 
Conclusion

          Based
on the above analysis, we dismiss the appeal.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER, WALKER, and GABRIEL, JJ.

 

PUBLISH

 

DELIVERED:  November 10,
2011









[1]A court may sua sponte review
its jurisdiction over the merits of an appeal.  See State v. Roberts,
940 S.W.2d 655, 657 (Tex. Crim. App. 1996), overruled on other grounds by
State v. Medrano, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002); see also
State v. Morgan, 160 S.W.3d 1, 3 (Tex. Crim. App. 2004) (granting
review, on its own motion, regarding whether article 44.01 authorized the
State’s appeal and holding that the State’s appeal was interlocutory for which
appellate courts have no jurisdiction).





[2]Section 12.41(1) provides
in part that “any conviction not obtained from a prosecution under this code
shall be classified as [a] . . . ‘felony of the third degree’ if imprisonment
in [TDCJ] or another penitentiary is affixed to the offense as a possible
punishment.”  Tex. Penal Code Ann. '
12.41(1) (West 2011).





[3]Section 12.41(2) permits
an out-of-state conviction to be classified as a Class B misdemeanor “if the
offense is not a felony and confinement in a jail is affixed to the offense as
a possible punishment.”  Id. '
12.41(2).  





[4]The State notes, “One
typical way of providing notice of enhancement allegations is including that
language in the indictment.  See Brooks v. State, 957 S.W.2d 30, 33
(Tex. Crim. App. 1997).”

 





[5]Intermediate appellate
courts have made similar holdings in the context of article 28.10.  See Tex.
Code Crim. Proc. Ann. art. 28.10 (West 2006) (setting forth requirements for
amending an indictment or information); see also Thomas v. State, 286
S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.], order) (“An enhancement
allegation that is not part of the State’s case-in-chief is not part of the
‘substance’ of the indictment.”), disp. on merits, 304 S.W.3d 849 (Tex.
App.—Houston [14th Dist.] 2009, pet. ref’d); Johnson v. State, 214
S.W.3d 157, 158–59 (Tex. App.—Amarillo 2007, no pet.) (noting that “[s]ince
enhancement paragraphs need not be pled in the indictment, it logically follows
that they are unessential to the validity of the indictment”).





[6]As
set out in Moreno, 18 U.S.C. section 3731 provided: 

In a criminal case an
appeal by the United States shall lie to a court of appeals from a decision,
judgment, or order of a district court dismissing an indictment or information
or granting a new trial after verdict or judgment as to any one or more counts,
except that no appeal shall lie where the double jeopardy clause of the United
States Constitution prohibits further prosecution.

 

          . . . . 

 

The provisions of
this section shall be liberally construed to effectuate its purposes. 

 

Id. at 331 (quoting Title
III of the Omnibus Crime Control Act of 1970, Section 3731 of Title 18 of the
United States Code).  





[7]Appellee responds,

[T]he case law essentially holds that
when the trial court makes a ruling which reduces the charge from a felony to a
misdemeanor, that action gives rise to an appeal under Art. 44.01, C.C.P. by
the State, as such action terminates a prosecution.  However, when a trial
court’s order only affected the possible punishment range, but did not
terminate prosecution, no appeal is available to the State.  Morgan, supra,
is the most recent Court of Criminal Appeals decision on this matter and is
controlling.





[8]We note that opinions not
designated for publication by the courts of appeals have no precedential value
in criminal cases.  See Tex. R. App. P. 47.7(a).  We address three
unpublished opinions, however, because the State relies on them in its
briefing.